IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

In re:                              :
                                    :
PEDRO L. ORTIZ,                     :     Case No. 08-03055 (GAC)
MARIA V. RAMOS,                     :
                                    :
          Debtor                    :     Chapter 7
_____:
                                    :
LOUIS VUITTON MALLETIER,            :
                                    :
          Plaintiff,                :
                                    :
          v.                        :     Adv. No. 08-00123
                                    :
PEDRO L. ORTIZ,                     :
MARIA V. RAMOS,                     :
                                    :
          Defendants                :
_____:

DECISION AND ORDER

The debtors filed a voluntary petition under Chapter 7 on May 13, 2008.  Louis Vuitton Malletier ("LVM") filed this adversary proceeding on August 18, 2008, seeking to except a debt from discharge pursuant to 11 U.S.C. § 523(a)(6).  LVM is in the business of manufacturing and selling luxury leather goods.  LVM's claim against the debtors is based on a judgment, in a trademark counterfeit action under the Lanham Act (15 U.S.C. § 1127, Et Seq.), issued by the United States District Court for the District of Puerto Rico in Civil Action 03-2277.  The debtors filed a motion to dismiss the complaint for lack of service and "lack of cause" (dkt. #6).  LVM opposed the motion to dismiss (dkt. #9).  The debtors also filed a motion for summary judgment (dkt. #17) and LVM

1

filed a cross-motion for summary judgment (dkt. #18), to which the debtors filed a reply (dkt. #19).  For the reasons set forth below, the debtors' motion to dismiss will be denied and LVM's cross-motion for summary judgment will be granted and the debt owed to it by the debtors will be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

BACKGROUND

On July 27, 2006, prior to the filing of this bankruptcy petition, a corporation, Peluet of Puerto Rico Corp. ("Peleut"), of which the debtor, Pedro Ortiz ("Ortiz") was the sole shareholder, was found liable for $100,000 in damages, plus costs, reasonable attorney's fees and post judgment interest, for infringing (counterfeiting) the trademark of LVM.[1]  Peleut manufactured, distributed, offered for sale and sold counterfeit LVM branded merchandise.  U.S. Marshals seized 170 counterfeited items.  The court found that Peluet had a long history of counterfeiting activities involving LVM trademarks.

Part of that history includes that on July 26, 2002, U.S. Customs notified Peluet that at the Port of San Juan, it had seized 200 cartons with different quantities of LVM fake handbags that

---

[1]Prior to the issuance of judgment, a Report and Recommendation granting LVM's Motion for Summary Judgment was signed by then Magistrate Judge Gustavo Gelphi on November 22, 2005.  Judge Jay Garcia-Gregory adopted the Report and Recommendation on January 4, 2006 and judgment was entered thereafter on July 27, 2006.

totaled 3,000 individual pieces.  On December 2, 2003, Peluet was temporarily restrained from counterfeiting LVM's trademarks and ordered to show cause as to why a preliminary injunction should not be issued.  On December 23, 2003, Peluet and LVM entered into a stipulation and informed the court that Peluet agreed to be subject to the preliminary injunction.  Peluet, its officers, directors, stockholders and others, in privity or acting in concert with it, were all enjoined from importing, marketing, selling and otherwise trading in goods bearing counterfeit copies of LVM's trademarks.

In spite of the injunction, Peluet twice tried to introduce through the Port of San Juan, fake goods with counterfeit copies of LVM's trademarks.  The first attempt occurred on May 4, 2004 and the shipment contained eleven counterfeit handbags, which the U.S. Customs Service seized and impounded at entry.  The second attempt occurred on May 26, 2004 and the U.S. Customs Service seized 120 counterfeit wallets.  The shipping documents demonstrated that the fake goods were consigned to Peluet's address.  The court found that Peluet was caught red-handed attempting to introduce counterfeit LVM goods into U.S. Territory while it was subject to the preliminary injunction.  The court concluded that it was clear that Peluet had shown a "gross disregard to the authority of the Court and of the Federal Judiciary."

The district court specifically concluded that Peluet engaged in the willful distribution and sale of goods labeled with

counterfeit LVM trademarks.  The court also concluded that the case was exceptional because the acts of infringement were malicious, fraudulent, deliberate or willful.  The court also stated that the defendant's illegal activities were willful and with knowledge of the fact that the goods they were selling were counterfeit.

The judgment was originally against Peluet, but after it became final and Peluet did not pay, LVM sought to enforce the judgment against Ortiz and the District Court held Ortiz jointly and severally liable.[2]  In holding Ortiz liable, the District Court determined that Peluet's disappearance was in most part due to the actions taken by Ortiz to impede LVM from collecting the judgment in its favor.  The court found that Ortiz conducted all of Peluet's business activity and was the mastermind in the counterfeiting scheme.  Finally, the court found that the interests of Ortiz and Peluet were so intertwined that they are virtually one person.

LVM claims that the debt is excepted from discharge as a debt for willful and malicious injury to LVM or LVM's property.  The debtors contend that the judgment against them does not represent "willful and malicious" conduct under the Bankruptcy Code, because the judgment is not based on an intentional tort and LVM has failed to prove maliciousness.  The debtors also argue that a Lanham Act

---

[2]A Report and Recommendation holding the debtors personally liable for counterfeiting LVM's trademark was signed by Magistrate Judge Justo Arenas on July 9, 2007 and adopted by Judge Jay Garcia-Gregory on July 24, 2007.

claimant need not prove intent or knowledge of the infringement to prevail in an action for violation of trademark. The debtors claim that LVM exaggerates the process which resulted in the judgment against the debtors, since they were one of seventy-four defendants and were not represented by an attorney in the proceedings. Moreover, the debtors contend that the damages awarded were statutory damages, which do not represent an actual injury.

DISCUSSION

The debtors initially argued that the action should be dismissed for lack of service and lack of cause. The debtors argue that the summons and complaint were not served within ten days of issuance of the summons as required by Fed. R. Bankr. P. 7004. As to service, the complaint was filed on August 18, 2008. Summons were issued on August 19, 2008 and the Certificate of Service, filed on September 3, 2008 (dkt. #5), shows that service was perfected on August 29, 2008. Thus, the Court concludes that service was accomplished within ten days of issuance of the summons and the motion to dismiss for lack of proper service will be denied. As to lack of cause, the Court will consider this basis, in the context of the cross-motions for summary judgment.

A motion for summary judgment in an adversary proceeding under § 523(a)(6) to have a debt declared nondischargeable is governed by the same standards applicable to motions under Fed. R. Civ. P. 56. See Fed. R. Bankr. P. 7056. Summary judgment is appropriate "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this case, the parties agree that there are no genuine issues of material fact and each claims to be entitled to judgment as a matter of law.

The doctrine of collateral estoppel applies in bankruptcy dischargeability proceedings. See Grogan v. Garner, 498 U.S. 279, 285 n.11 (1991). Collateral estoppel "forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action between the same parties, even when different causes of action are involved." Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 69 (1st Cir. 2008). To apply the doctrine, the following factors must be met:

> (1) an identity of issues (that is, that the issue sought to be precluded is the same as that which was involved in the prior proceeding), (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding), (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order), and (4) the centrality of the adjudication (that is, that the determination of the issue in the prior proceeding was essential to the final judgment or order).

Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 430 (1st Cir. 2005)(quoting Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999)).

As the First Circuit Court of Appeals reiterated, in considering whether a debt based on violation of the Consumer

6

Protection Act, Mass. Gen. Laws ch. 93A, could be excepted from discharge under 523(a)(2) for fraud, "[a]n issue may be actually decided for purposes of collateral estoppel, even if it is not explicitly decided, if it 'constituted, logically or practically, a necessary component of the decision reached in the prior litigation.'" Stoehr v. Mohammed, 244 F.3d 206, 208 (1st Cir. 2001) (quoting Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30-31 (1st Cir. 1994)). And as the Bankruptcy Appellate Panel recently stated, in considering the same two statutes,

> in determining whether an issue was actually litigated and decided, a federal court is "free to go beyond the judgment . . . and examine the pleadings and evidence in the prior action." Nissan v. Weiss (In re Weiss), 235 B.R. 349 (Bankr. S.D.N.Y. 1999) (stating that the judge "may look beyond the [judgment] and examine the parties' pleadings as well as the evidence in the [prior action] to determine whether the [identical issue] was actually litigated"), aff'd, 255 B.R. 115 (S.D.N.Y. 2000).

In re Stanley-Snow, 2009 WL 1219943, *8 (B.A.P. 1st Cir. 2009).

The debtors argue that the first element of collateral estoppel -- whether the issues in the two proceedings are identical -- was not met. Specifically, they assert that the district court judgment cannot have preclusive effect in this proceeding as the essential elements of an exception to discharge under § 523(a)(6) -- namely, willful and malicious injury -- were not litigated nor determined by the district court. The debtors contend that the judgment against them merely represents a finding that the LVM trademark was used by them without permission and that consumers

were likely confused.   LVM argues that the district court's specific findings and conclusions on the Lanham Act violation are determinative of the nature of the injury for purposes of § 523(a)(6).

> In general, the First Circuit Court of Appeals has held that:

> [t]o establish trademark infringement under the Lanham Act, [a claimant is] required to prove that: (1) it owns and uses the . . . marks; (2)[the defendant] used the same or similar marks without [the holder's] permission; and (3) [the defendant's] use of the . . . marks likely confused . . . consumers thereby causing [the holder] harm.

Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 60 (1st Cir. 2008).   Yet, willfulness "arises when an infringer proceeds despite knowledge of the senior user's trademark." Visible Systems Corp. v. Unisys Corp., 551 F.3d 65 (1st Cir. 2008).

Comparing this to § 523(a)(6), a  debt is nondischargeable "for willful and malicious injury by the debtor to another entity or the property of another entity."  11 U.S.C. § 523(a)(6).  To establish that a debt is nondischargeable under this section, a creditor must show that the debtor perpetrated an intentional act and intended the consequences of the act, not simply the act itself.  Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998).  Merely negligent or even reckless acts do not meet the "willful and malicious" standard.  Roumeliotis v. Popa (In re Popa), 140 F.3d 317, 318 (1st Cir. 1998).  "'[M]alice' under 523(a)(6) requires 'a showing that the debtor's willful, injurious conduct was undertaken

8

without just cause or excuse.'" <u>Gomes v. Limieux (In re Limieux)</u>,
306 B.R. 433, 440 (Bankr. D.Mass. 2004)(<u>quoting</u> <u>McAlister v.
Slosberg (In re Slosberg)</u>, 225 B.R. 9, 21 (Bankr. D.Me. 1998)).
Thus, to show a willful and malicious injury under 523(a)(6), the
creditor must show that "1) the injuries complained of were the
result of an act of the debtor done without justification or
excuse; and 2) the debtor acted either intending to cause an injury
or with substantial certainty that the injury would occur." <u>In re
Limieux</u>, 306 B.R. at 440.

Accordingly, simply by definition, this Court agrees that a
violation of the Lanham Act and a willful and malicious injury are
not necessarily synonymous, and that Lanham Act liability may be
premised on conduct that is not willful and malicious. Therefore,
the principle of collateral estoppel does not automatically operate
to render a Lanham Act judgment nondischargeable because it would
be possible under the same set of facts to find a violation of the
Lanham Act, which does not satisfy the elements of
nondischargeability under 11 U.S.C. § 523(a)(6).

Notwithstanding, this does not mean that a Lanham Act judgment
can never have preclusive effect in a § 523(a)(6)
nondischargeability proceeding. Rather, collateral estoppel may be
appropriate where there is ample support in the record for
concluding that the district court based its Lanham Act judgment on
the defendant's willful and malicious conduct. Where defendants

continue to infringe upon a trademark after entry of a federal injunction against them, the infringement may be found to be willful and without just excuse, and therefore malicious. See Vuitton v. Klayminc (In re Klayminc), 37 B.R. 728 (Bankr. S.D.Fla. 1984).

In the present case, the district court adopted the specific findings and conclusions of the magistrate regarding the debtors' conduct. The district court found that the debtors' distribution of the counterfeit goods was willful and that the case was exceptional because the acts of infringement were malicious, fraudulent, deliberate or willful. The court later stated that the illegal activities were willful and with knowledge of the fact that the goods they were selling were counterfeit.

And while a Lanham Act claimant need not prove intent or knowledge of an infringement to prevail, the debtors engaged in counterfeiting. "Counterfeiting is the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 25:10 (4th Ed. 2009). "Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise. Thus, counterfeiting is hard core or 'first degree' trademark infringement and is the most blatant and

egregious form of 'passing off.'  Id.

This Court concludes that this is a particularly reprehensible case because the debtors repeatedly violated LVM's trademark, even after being enjoined from doing so.  The debtors' acts were intentional (willful) and without justification or excuse (malicious).  The debtors' acts were committed with substantial certainty that the injury would occur.  The debtors were fully aware that they were importing and selling counterfeit goods and that their acts were causing damage to LVM and its property.

This Court concludes that the district court's findings of willful and malicious injury were sufficient to support a ruling that the debt owed by the debtors to LVM is nondischargeable under § 523(a)(6) and the debtors are collaterally estopped from relitigating those issues here.[3]

Finally, the debtors indicate that the Lanham Act allows up to $100,000 in damages per trademark infringed and up to $1M per mark infringed if the infringement was willful and claim that since LVM was only awarded statutory damages of $100,000, the district court's judgment does not represent a finding of willful infringement.  Moreover, the debtors contend that the allowance of statutory damages is not a measure of actual damages or actual

---

[3]The fact that the debtors were one of many defendants and that they were not represented by counsel in the district court proceedings does not affect this outcome.  The debtors continued to defend the action and actively participated at hearings, including the hearing on damages.

injury.

The Court rejects this argument as well. While statutory damages are available in lieu of actual damages, this is largely due to the difficulty of proving and accurately quantifying the financial injury. The Court concludes that the award of statutory damages, where the debtors' actions caused a willful and malicious injury, are nondischargeable in bankruptcy.

ORDER

WHEREFORE IT IS ORDERED that the debtors' motion to dismiss (dkt. #6) shall be, and it hereby is, DENIED. The debtors' motion for summary judgment (dkt. #17) is also DENIED.

IT IS FURTHER ORDERED that Louis Vuitton Malletier's cross-motion for summary judgment (dkt. #18) shall be, and it hereby is, GRANTED. The district court's judgment against the debtors in the amount of $100,000, plus costs, reasonable attorney's fees and post judgment interest is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

SO ORDERED.

San Juan, Puerto Rico, this 2nd day of June, 2009.

BY THE COURT:

s/ Gerardo A. Carlo

_____
GERARDO A. CARLO
U.S. Bankruptcy Judge